## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

JONATHAN R.[1],

      **Plaintiff,**

v.                                                    **ACTION NO. 2:23cv125**

COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

      **Defendant.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Jonathan R. ("Plaintiff") seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") partially denying his claim for Supplemental Security Income ("SSI") under the Social Security Act. Specifically, Plaintiff's pro se pleadings argue in a general fashion that he remains disabled, and that the residual functional capacity ("RFC") formulated by the Administrative Law Judge ("ALJ") after a closed period of disability failed to account for all the effects of his mental and physical impairments. Pl.'s Brief (ECF No. 12, at 1-2). Defendant filed a brief supporting the Commissioner's decision, arguing that the ALJ's decision is supported by substantial evidence and that none of the purported errors Plaintiff identifies warrants remand. Def.'s Brief Supp. Comm'r's Dec. ("Def.'s Brief") (ECF No. 13, at 13-19). Defendant also provided Plaintiff notice of his right to respond as required by Local Rule 7(K) and the Fourth Circuit's decision in <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). (ECF No. 14). This action was referred to the undersigned United States Magistrate Judge

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure.  For the reasons stated below, this Report recommends that the final decision of the Commissioner be AFFIRMED.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed his current application for SSI on March 10, 2020, originally alleging that he was disabled as of February 17, 2011.  During the hearing he moved to amend his alleged onset date to January 7, 2020.[2]  (R. 27).   His application was denied initially, (R. 181), and upon reconsideration.  (R. 194).  Plaintiff then requested an administrative hearing, which was held before ALJ Eric Borda on June 10, 2021.  (R. 87).  ALJ Borda issued a favorable opinion on June 17, 2021, concluding that Plaintiff was disabled, but that medical improvement was expected and recommending continuing review in 24-month intervals.  (R. 155-64).  ALJ Borda's opinion was later vacated and remanded by the Appeals Council.  (R. 167-73).  Following a second hearing before ALJ Maryann Bright in May 2022,  the ALJ concluded that Plaintiff was disabled for a closed period between January 7, 2020 and May 11, 2021.  (R. 22-45).  But, after May 12, 2021, ALJ Bright found he was not disabled within the meaning of the Social Security Act as a result of medical improvement with regard to both his physical and mental impairments.  See id.  The ALJ therefore denied his claim for benefits after May 12, 2021.  (R. 22).  The Appeals Council then denied Plaintiff's request for review of the ALJ's decision (R. 8), thereby making the ALJ's decision the final decision of the Commissioner.  Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this pro se action seeking judicial review of the portion of the Commissioner's decision which

---

[2] Plaintiff was previously found disabled beginning February 17, 2011, and received benefits for several years. But on May 5, 2017, during a periodic review of his disability, he was found not disabled as a result of medical improvement and his benefits were terminated. (See R. 117-29). After an automobile accident in January 2020, he filed the present application for benefits on March 10, 2020, seeking benefits again, beginning with his first treatment after the accident on January 7, 2020.

2

terminated his benefits on May 12, 2021.  This case is now before the court on the parties' briefing.

## II.    <u>FACTUAL BACKGROUND</u>

Plaintiff was born in 1984 and was thirty-five (35) years old on his amended disability onset date. (R. 36).  Plaintiff previously worked as an automotive repair technician, and electronics helper.  (R. 43).

Plaintiff's prior period of disability between 2012 and 2017 was terminated following improvement in his back pain resulting from fusion surgery.  (R. 33).  Thereafter, he was able to work, and his earnings record reflects that he earned income in 2017 and 2019, but in January 2020, he exacerbated his back pain in an automobile accident and sought disability benefits again. (R. 33, 611, 614).

He saw a spine specialist on January 7, 2020, and reported being a restrained driver in a T-bone collision with another vehicle on January 2, 2020.  (R. 674).  His examination revealed tenderness in the left hip, lumbar paraspinal tenderness and pain with lumbar extension, axial loading, and forward flexion.  His lumbar and hip range of motion were intact, but cervical range of motion was limited.  (R. 676).  An MRI in March 2020 revealed evidence of his prior fusion surgery as well as a residual disc bulge at L5-S1, which appeared "grossly unchanged" from a prior MRI in 2019.  (R. 33) (citing R. 766, 770)).  A physical exam that day again revealed pain to palpation of the SI joint, paraspinal muscle spasm, and a deceased range of motion.  See also (R. 762 (May 18, 2020), 783 (April 12, 2020), 896 (July 14, 2020)).

In August 2020, Plaintiff had another surgery, this one an anterior lumbar interbody fusion at L5-S1.  (R. 870).  In October, his surgeon prescribed bone growth stimulator to promote healing. (R. 1404).

Plaintiff underwent therapy following his August surgery. On September 3, 2020, the therapist observed his wound was healing well with no infection or swelling. (R. 1132, 1135). His gait and station were normal with use of a cane to ambulate, he had negative straight leg raising test and was full weight bearing. (R. 1135). By his October 2, 2020 follow-up, Plaintiff reported feeling "much better," and his x-rays looked "excellent," but his primary care physician expressed concern that he had started smoking again. (R. 1144). At a follow up on November 18, 2020, Plaintiff had stopped smoking. (R. 1171). He was using the bone growth simulator. He reported his pain was a 6 out of 10, and his exam revealed no pain with extension, axial loading, forward flexion, or hip rotation. (R. 1175). He had a normal, non-antalgic gait and station, was full weight bearing, and ambulating without an assistive device. (R. 1174-76). By August 2021, he described his pain as a 4/10 and denied any neurological deficit. (R. 1361-62). His lumbar range of motion was intact without tenderness, and he exhibited +4/5 lower extremity strength with a negative straight leg raising test and normal gait. (R. 1362-63). An exam in January 2022, again showed a normal range of motion. (R. 1509). In February, Plaintiff reported increased pain but stated he felt "dramatically better...far more functional." (R. 1558). X-rays that day revealed a solid interbody fusion with his stenosis essentially resolved. Id. In the provider's records his doctor stated that his back was "safe and stable." (R. 1558). Id.

With regard to Plaintiff's mental impairments, mental status exams are essentially consistent throughout since his January 2020 automobile accident. For the period contested in this action, a medication management visit in May 2021 revealed that Plaintiff was "doing the best I can" but continued to report low mood related to stressors. (R. 1514). The following month he reported he was handling things well despite his unstable living situation. (R. 1519). He was able to walk his dogs, remaining calm with a logical thought process. (R. 1520). He described taking

4

care of himself and his family but was still homeless. Id. His mental status exam revealed him to be calm and cooperative. His speech was coherent and thought process logical. Id. He described his mood as "hanging in there," but he had no suicidal thoughts, no delusions. Id. His insight was limited to fair, with an adequate fund of knowledge. (R. 1519-20). At a follow up visit in August 2021, Plaintiff continued to report handling things "fairly well overall." (R. 1527). His treating provider increased medication to address mood symptoms. (R. 1529). His mental status exam was unchanged. He reported that if his SSDI was denied he planned to look into truck driving. Id. In September 2021, he reported the increased dosage was helpful, but he remained anxious, irritable, angry, and depressed due to his unstable housing situation. (R. 1536). By October 2021, he reported an improved living situation, denied feeling anxious or depressed, but had moments of irritability and mood swings. (R. 1540-41). By February 2022, Plaintiff reported doing alright after another medication change with his symptoms "about the same," but "relatively manageable." (R. 1552).

Medical opinion evidence in the record for the period in dispute included a May 12, 2021 physical functional capacity evaluation completed by Plaintiff's orthopedic specialist, David Alcantara, M.D. (R. 1036). Dr. Alcantara checked boxes indicating that Plaintiff could lift 26-50 pounds occasionally and 6-10 pounds frequently, but never 50-100 pounds. Id. He indicated Plaintiff had no restrictions in simple grasping, pushing or pulling with arms, or fine manipulation, and no restrictions driving or being around moving machinery. Id. He indicated Plaintiff could sit four hours in an eight-hour workday and stand four hours in an eight-hour workday, but nevertheless, checked the box stating Plaintiff could not sustain fulltime work at any level of exertion. Id.

With respect to his mental limitations, Plaintiff submitted a mental status exam from Dr. Karen L. Russell, Psy.D. dated December 2, 2020. (R. 1020). Dr. Russell opined that Plaintiff could demonstrate adequate short and long-term recall. (R. 1031). His thought content, process, and mood were all within normal limits. Id. His speech and affect were normal. Id. He described problems dealing with people, but said he regularly helped care for family members, drove, helped his son with schoolwork, and shopped in stores. (R. 1030). Dr. Russell found he could maintain regular attendance in a work setting but would likely work best in situations with little to no interpersonal interactions. She observed that he had "some difficulties with chronic pain," but no "thought disturbance that would interfere with his ability to complete a normal workday." (R. 1032).

During the hearing before ALJ Bright, Plaintiff's counsel noted the amended alleged disability date to January 7, 2020, to correspond with his most recent accident. Plaintiff confirmed this amendment. (R. 57-58). Plaintiff testified he was homeless, but previously resided at an apartment with his wife and 10-year-old son. (R. 59). He stated his wife was also disabled but still helped him sometimes. Id. He testified he could drive 30 minutes, but longer than that caused him pain. (R. 60). He earned a GED and had previous training and employment as an auto technician and construction electrician. Id. He left two prior jobs because of disagreements with his boss. (R. 61-62). He stated he could not work due to physical limitations and an inability to get along with bosses and supervisors. (R. 66). The ALJ inquired whether he had tried less strenuous work and Plaintiff stated, "I try to stay away from most people because I get mad fast." (R. 67). He receives mental health treatment in the form of therapy and medication and stated his last hospitalization was during a period of incarceration in 2003. Id. But he described "doing pretty good on the outside," with a "good support system." Id.

6

After Plaintiff's testimony, the ALJ examined a Vocational Expert, Sheryl Bustin ("VE"). The ALJ first asked the VE to characterize Plaintiff's past relevant work, which she described as medium exertional level, SVP 5 (mechanic) or 3 (electrical helper). (R. 78-79). She then asked whether jobs were available for a hypothetical individual of Plaintiff's age, education and work experience, who had the capacity to do light work with certain postural limits that involved occasional interaction with co-workers, but no direct in-person contact with the general public, and required only simple work-related decisions, simple instructions, and occasional changes in the workplace setting. (R. 79-80). The VE identified cleaner, housekeeper (DOT Code 323.687-014), with 137,000 jobs nationally, and small products assembler (DOT Code 706.684-022), with 100,000 jobs nationally. (R. 80). The ALJ then changed the exertional requirement to sedentary, and the VE described three jobs as available with these restrictions, dowel inspector (DOT 669.687-014), with 16,000 jobs nationally, final assembler, optical goods (DOT 713.687-018), with 40,000 jobs nationally, and table worker (DOT 739.687-182), with 14,000 jobs nationally. (R. 81). The VE also testified that a worker's absence for more than two days per month or being off task more than 15% of the workday, would preclude all work. (R. 83-84).

### III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla"

of evidence but may be somewhat less than a preponderance. <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996); <u>Hays</u>, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." <u>Craig</u>, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. <u>Perales</u>, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.   <u>ANALYSIS</u>

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under the age of sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. 42 U.S.C. §§ 416(i), 423. The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); <u>see also</u> 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" that makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); <u>see</u> 42 U.S.C. § 423(d)(2)(A).

8

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520, 416.920. The burden of proof and production rests on the claimant during the first four steps but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

9

A.     **The ALJ's Decision**

In this case—and as relevant to the decision being challenged—the ALJ made the following findings under the five-part analysis: (1) Plaintiff had not engaged in gainful activity since his amended alleged onset date of January 7, 2020; (2) he had severe impairments of post laminectomy syndrome, status-post fusion at L5-S1, obesity, bipolar disorder, anxiety disorder, and personality disorder; and (3) he did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in Appendix 1. (R. 31). The ALJ then determined Plaintiff's RFC between January 7, 2020 and May 11, 2021 concluding that Plaintiff had the RFC to perform a limited range of light work activities—but would be off task and miss work beyond customary tolerances—thus eliminating all work and rendering Plaintiff disabled during that closed period.[3] The ALJ then examined the period beginning May 12, 2021, concluding that Plaintiff had significant medical improvement following his second fusion surgery. (R. 39). She concluded his RFC improved, but still limited him to light work, with a sit/stand option and additional postural limitations. (R. 39-40). He could have no more than occasional interaction with coworkers, supervisors, and no in-person contact with the public; he could remember simple instructions and make simple work-related decisions. In addition, due to his improvement he could perform tasks on a sustained basis to complete a normal workday with customary breaks. (R. 39-42). At step five, relying on the VE's testimony, the ALJ concluded that jobs which Plaintiff can perform exist in significant numbers in the national economy. (R. 43-44).

---

[3] The ALJ's finding that Reeves was disabled between January 7, 2020 and May 11, 2021 is not under review.

Plaintiff's pro se filings, though difficult to analyze, appear to argue generally that he is more disabled than found by the ALJ, asserting that several of his treating orthopedists concluded he was unable to work. Pl.'s Brief 1 (ECF No. 12). He also argues that the fully favorable decision by ALJ Borda was correct. Id., at 1. He states that he is still in pain, and that his mental health problems are longstanding and unchanged. Id. After considering these arguments and the Commissioner's opposing brief, this report recommends that the court find that the ALJ's decision ending the closed period of disability was supported by substantial evidence because the ALJ did not err in assessing Plaintiff's RFC, properly relied on the VE's testimony, and considered all the record evidence of Plaintiff's impairments.

## B.     The ALJ Properly Accounted for Plaintiff's Mental and Physical Impairments When Making Her RFC Determination

I have construed Plaintiff's general complaints about the evidence as an attack on the ALJ's RFC findings after May 12, 2021, and the sufficiency of the evidence to support it. An RFC is the plaintiff's maximum ability to work despite his impairments. 20 C.F.R. § 404.1545(a)(1); see Social Security Ruling 96-9p, 1996 WL 374185 (July 2, 1996) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis."). When, as is the case here, a plaintiff's impairments do not meet or equal a listed impairment under step three of the sequential analysis, the ALJ must determine the plaintiff's RFC. 20 C.F.R. § 404.1520(e). At step four, the ALJ then determines whether the plaintiff can perform his past relevant work. Id. § 404.1545(a)(5)(i). If the ALJ determines that the plaintiff cannot perform any relevant past work, as was the case for Plaintiff, the ALJ uses the RFC at step five to determine if the plaintiff can "adjust to any other work that exists in the national economy." Id. § 404.1545(a)(5)(ii).

11

The ALJ is responsible for determining a plaintiff's RFC at the administrative hearing level, and in making this determination, the ALJ considers all of the relevant medical and other evidence[4] in the record.  Id. §§ 404.1527(b), 404.1545(a)(3), 404.1546(c).  "[R]elevant evidence . . . includ[es] information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

Here, the ALJ determined that as of May 12, 2021, Plaintiff had the RFC to perform a limited range of light work

> [E]xcept he can stand and/or walk approximately 4 hours over the course of an 8-hour workday, and sit approximately 4 hours over the course of an 8-hour workday, with normal breaks.  He requires the option to shift position between sitting and standing every 30 minutes without leaving the workstation or abandoning tasks.  He can occasionally stoop, crouch, kneel, crawl, and climb ramps or stairs.  He can never climb ladders, ropes or scaffolds.  He can balance on even surfaces and stand and walk on level terrain.  He can tolerate occasional exposure to extreme hot, extreme cold, wetness, humidity, vibration, unprotected heights, dangerous, unguarded machinery, and respiratory irritants such as fumes, odors, dust, gases, and poorly ventilated areas.  He can tolerate occasional interaction with coworkers and supervisors but cannot tolerate direct or in-person interaction with the public.  He can use judgment to make simple work-related decisions.  He can deal with occasional changes in a routine work setting.  He can understand, remember, and carrying [sic] out simple instructions.  He can perform tasks on a regular and sustained basis to complete a normal workday and week, with customary breaks.

(R. 39-40).  Plaintiff's pro se pleadings do not specify how the foregoing RFC fails to account for limitations resulting from his impairments, nor do they identify any medical opinion evidence the ALJ overlooked or improperly discounted.  Instead, Plaintiff contends that one of his treating physicians, Dr. Alcantara, said he "was unable to work at any level of exertion."  Pl.'s Brief 1

---

[4] "Other evidence" includes "statements or reports from [the claimant], [the claimant's] treating or nontreating source, and others about [the claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how ... impairment(s) and any related symptoms affect [the claimant's] ability to work.  20 C.F.R. § 404.1529(a).

(ECF No. 12, at 1).  He states that he cannot sit or stand more than ten minutes without severe pain.

But, a finding that a claimant is disabled or not disabled is reserved to the Commissioner, and a physician's opinion on that ultimate issue is entitled to no special deference.  Thompson v. Astrue, 442 Fed. Appx 804, 808 (4th Cir. 2011).  Moreover, while Dr. Alcantara did offer opinions on certain limitations imposed by Plaintiff's back pain, the ALJ in this case  explained why she was not fully persuaded by his testimony.  (R. 41).

ALJ Bright first noted that she agreed with Dr. Alcantara's limitations on standing and walking, which she noted were consistent with his reported activities—including walking his dog, helping with housework and taking his son to school.  (R. 41).  She also agreed with Dr. Alcantara's lifting limits—which she imposed by limiting Plaintiff to light work.  But she explained that medical records as of May 12, 2021 confirmed Plaintiff was doing alright, and contemplating a return to work (R. 41) (citing R. 1372) (office note reporting Plaintiff "much better than before surgery," and "thinking of his next career move")).  As a result, ALJ Bright was not persuaded by Dr. Alcantara's conclusion that Plaintiff could not sustain fulltime work after that date.

Plaintiff also fails to contend with the ALJ's carefully documented conclusion that he experienced medical improvement following his surgery.  As explained in her opinion, ALJ Bright reported Plaintiff doing "much better" at his May 2021 visit.  (R. 39).  He was walking his dogs, lifting up to 50 pounds, and had no pain with lumbar flexion, extension, or axial loading.  Id. (citing R. 1372).  He had a normal gait and negative straight leg raising test.  Id.  The cited record reflects Plaintiff's main complaint was pain with prolonged standing or sitting which he accommodated by shifting position.  This is precisely the limitation imposed in his RFC.  (R. 40).

As shown by the ALJ's analysis, she discussed the evidence presented in the record and fashioned an RFC that accounted for Plaintiff's functional limitations which was supported by substantial evidence in that record. Where medical evidence conflicts, it is the ALJ's job to assess that evidence in the context of the claimant's allegations and determine the work-related limitations imposed by his impairments. King v. Califano, 599 F.2d 597, 599 (4th Cir. 1997); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Here, the ALJ properly examined the evidence in the record and discussed the weight she gave to the evidence, and specifically assigned "little weight" to the opinions Plaintiff now relies upon. Her decision assigning Plaintiff's RFC is supported by substantial evidence.

**D.      The ALJ properly analyzed evidence related to Plaintiff's mental impairments.**

Plaintiff's brief also does little to illuminate any error in the ALJ's assessment of his mental conditions. He actually notes that his mental health diagnosis is "the same" as when his benefits were terminated between 2017-2019. Pl's. Brief (ECF No. 12, at 1). The ALJ's review of the record in her opinion seems to confirm this assessment. Recognizing the stress of his unstable housing situation, the ALJ nonetheless found that Plaintiff was handling things well overall. (R. 41) (citing R. 1514, 1515, 1519-20)). His medication was adjusted to account for low mood. (R. 41) (citing R. 1527-28)). And by November 2021 he was doing well on his medication, his mood was stable and depression and anxiety both manageable. (R. 42) (citing R. 1544)).

Again, Plaintiff has not identified any medical record, testimony, or opinion evidence contradicting the ALJ's conclusions that any mental health limitations would be accommodated within his RFC. Indeed, the limits she imposed—including limited interaction with coworkers and no direct contact with the general public—were carefully targeted to his testimony that he does not do well around others. But with the other limitations imposed, including simple work-related

decisions, simple instructions, and only occasional changes in work setting, the ALJ's RFC accounts for all of the limitations appearing in the medical record. Plaintiff has not meaningfully argued otherwise.

## V.     **RECOMMENDATION**

Because the ALJ's opinion denying benefits as of May 12, 2021 is supported by substantial evidence, I recommend the court GRANT the relief requested in the Commissioner's Brief in Support of SSA's Decision Denying Benefits and in Opposition to Plaintiff's Motion for Summary Judgment. (ECF No. 13), DENY the relief requested in Plaintiff's Brief (ECF No. 12), and AFFIRM the decision of the Commissioner.

## VI.     **REVIEW PROCEDURE**

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.     A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

March 20, 2024

**Clerk's Mailing Certificate**

A copy of the foregoing Report and Recommendation was mailed this date to:

**Jonathan R.**
1449 Kearney Road
Norfolk, VA 23503

A copy of the foregoing was provided electronically this date to:

**Sean Douglas Jansen**
United States Attorney Office - Norfolk
101 W Main St
Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By_____
            Deputy Clerk

_____, 2024